# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON ENERGY, LTD. | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:15-cv-3756 |
| | § | |
| | § | |
| THIRUMALAI CHEMICALS, LTD. | § | |
| DEFENDANT | § | |

## FILING IN COMPLIANCE WITH CASE MANAGEMENT ORDER (DOC. NO.7)

Please find attached Statement of Brad J. Lockwood as required by the Case Management

Order (Doc. No. 7) Paragraph 2.

Respectfully submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

George R. Diaz-Arrastia
Attorney-in-Charge
State Bar No. 05805600
S.D. Texas Federal I.D. No. 12
Email: gdarrastia@sdablaw.com
Pennzoil Place – North Tower
700 Milam, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

ATTORNEY-IN-CHARGE FOR PLAINTIFF
TRICON ENERGY, LTD.

OF COUNSEL:
SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
William W. Russell
State Bar No. 00794573
S.D. Texas Federal I.D. No. 200426
Email: wrussell@sdablaw.com
Briana J. Bassler

1

State Bar No. 24059433
S.D. Texas Federal I.D. No. 980817
Email: bbassler@sdablaw.com
Pennzoil Place – North Tower
700 Milam, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2016, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail:

Jeff Joyce
Email jjoyce@jmlawyers.com
Huma Ali
Email hali@jmlawyers.com
712 Main Street, Suite 1500
Houston, Texas 77002
713.222.1112 Telephone
713.513.5577 Facsimile

*Attorney for Defendants*

George R. Diaz-Arrastia

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON ENERGY, LTD. | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:15-cv-3756 |
| | § | |
| | § | |
| THIRUMALAI CHEMICALS, LTD. | § | |
| DEFENDANT | § | |

## STATEMENT OF BRAD J. LOCKWOOD

My name is Brad J. Lockwood.  I am a citizen of the United States and over the age of 18.  I am fully competent to make this statement.  The facts in this Statement are based upon my personal knowledge.

1.  I am a trader of petrochemicals at Tricon Energy, Ltd. ("Tricon").  I also am an owner of that company.  I have been a petrochemicals trader for 11 years.  I also supervise traders at Tricon.  I know how the international petrochemicals trading business works.

2.  On January 15, 2014, I received an email from my colleague Amit Bansal with an inquiry from Thirumalai Chemicals ("Thirumalai") regarding a petrochemical called orthoxylene ("OX").  2014.01.15 Email from Bansal to Lockwood, TRI00001.  Thirumalai was looking to buy OX for delivery to India through a trader named Mark Vijay.  I contacted Vijay that same day and told him Tricon was involved in selling OX to India and asked him for Thirumalai's requirements and price idea.  2014.01.15 Email from Lockwood to Vijay, TRI0000003.  Vijay identified himself as a trader for Thirumalai.

3.  Vijay informed me that Thirumalai wanted to import 5000 MT of OX into

the Indian port of Chennai and asked for Tricon to make an offer. He also said Thirumalai wanted to import the OX in parcel sizes of 2,000-3,000 MT. 2014.01.15 Email from Vijay to Lockwood, TRI00004. This was the first trade between Tricon and Thirumalai, and both hoped that it would be the beginning of a long term relationship. As best as I have been able to determine after making inquiries with colleagues at Tricon, this is the only transaction between Tricon and Thirumalai.

4.      After receiving Thirumalai's requirements, Vijay and I discussed Thirumalai's price ideas over the phone. I recall he was hoping to buy somewhere near $1400 per MT.

5.      Vijay never mentioned any limitations on his authority to make contracts for Thirumalai. As a trader, Mr. Vijay's job is to make contracts for his company. It is absolutely standard in international petrochemicals trading that traders have authority to make the deals they negotiate. It is standard in the industry that when a trader approaches another trader to buy a petrochemical, the trader has authority to make the deal.

6.      The international trading of petrochemicals would not work if traders did not have authority to make contracts on behalf of their companies. The pricing of petrochemicals like OX can be and at times is extremely volatile. Prices can move based upon the movement of the price of crude oil on the New York Merc futures exchange. For this reason, deals are made quickly. There is not usually time for a trader to go back to clear his deal with his company. Traders understand that other traders have authority to make deals that bind their company. That is what a trader is for. In the rare situation where a trader needs approval from some other person in his company, the trader communicates that information very clearly to his counterparty before accepting an offer, along with an amount of time in which the trader will revert back. Usually the amount of time is a matter of minutes, or a few hours at most, because of the volatility of the prices. If limitations on the trader's authority are not communicated this way, it is understood

that the trader has authority and when he accepts an offer, the deal is made. Because everyone understands that traders have authority to bind their company, when a trader leaves a company it is common for the company to notify other trading companies that the trader has left and no longer has authority to bind the company. Deviations from the industry standard that traders have authority to make deals are so rare that they stick out. As I explain in detail in this statement, Vijay approached Tricon to buy OX for Thirumalai, negotiated terms, and requested I make an offer. He then accepted my offer, attempted to negotiate changes to certain terms, succeeded in adding terms, and was the face of Thirumalai in discussing the specifics and logistics of the deal. His authority to make deals as a trader on behalf of Thirumalai was clear. No one at Thirumalai ever informed me or anyone at Tricon that he needed further approval for any part of the deal.

7.     On January 16, I sent Vijay an offer for the first parcel size of OX. The offer was for 2000-3000 MT of OX, exact quantity determined at seller's option, to be delivered to Chennai, India for $1420 USD per MT with a load window of February-March, 2014. 2014.01.16 Email from Lockwood to Vijay, TRI00005.

8.     After sending this offer, I spoke with Vijay on the phone regarding two parts of the offer: the price and the load window. These were the only two parts of the offer he was concerned about.

9.     Later that same day, after some discussion with Vijay, I sent a revised offer. The revised offer reduced the price to $1405 USD per MT and shortened the load window to February 1-28, 2014. 2014.01.16 Email from Lockwood to Vijay, TRI00007. The offer also provided payment was due within 60 days from the bill of lading via documentary letter of credit from a Tricon approved bank. The offer also provided that no letter of credit was required if Thirumalai was approved for an open account by Tricon's credit department. Tricon's offer was expressly valid until Noon, India Time on Friday, January 17, 2014. I sent the revised offer at 9:12 a.m. Houston time, which was

8:42 p.m. India time, on Thursday January 16.

10.     After I sent the revised offer on January 16, Vijay and I again discussed the deal by phone. Vijay informed me that the price was okay and that Thirumalai would accept the deal. We also discussed restrictions on low flash cargo at Chennai Port and Thirumalai's request for 90 day payment terms instead of 60. I accepted verbally, but told Vijay that I would discuss with a colleague in London who was going to handle logistics. I explained to Mr. Vijay that I would like a confirmation of Thirumalai's acceptance in writing, and that I would confirm the 90 day credit terms in writing as well. At this point, Thirumalai had agreed to the terms of Tricon's offer and we had a deal. The written confirmations that followed were just that, confirmations of the deal we already made.

11.     The change from 60 to 90 days payment terms was not material to this deal. The interest Tricon would pay for 30 additional days of credit would have amounted to less than $20,000.00, which is not material on a transaction worth $4,215,000.

12.     On January 17, at 10:42 a.m. India Time, which was 11:12 pm on January 16 in Houston, before the expiration of the validity of Tricon's offer, Vijay emailed me written confirmation of Thirumalai's acceptance of the offer. Vijay reiterated Thirumalai's request for 90 days instead of 60 days as payment terms. 2014.01.16 (2014.01.17 in India) Email from Vijay to Lockwood, TRI0008.

13.     Vijay's request to change the payment terms from 60 to 90 days did not have a validity term. It is a custom in the industry that all written offers or counter-offers have a validity term, because the prices of petrochemicals are so volatile that it is impractical to leave an offer available for acceptance for any extended amount of time. As an illustration of the importance of the validity term, with a brokered transaction, a typical offer has a 10 minute validity. That Vijay did not put a validity term on his request for 90 rather than 60 days to pay for the OX shows that he was not making a counter-offer but only confirming what we had already discussed.

- 4 -

14.     On January 17, a little less than an hour after sending the acceptance, Vijay sent Thirumalai's financial reports for consideration by Tricon's credit department. 2014.01.16 (2014.01.17 in India) Email from Vijay to Lockwood TRI 00056. This would not be done if there was no deal.

15.     The price for OX dropped during the hours following Thirumalai's January 17 acceptance of Tricon's $1405 per MT offer. This is one of the risks of commodity trading. The industry depends on buyers and sellers making deals quickly before prices change. When the prices change against your company after a trader has made a deal, the trader knows that his or her company has to take the loss. The moment a trader says "I agree" to the terms offered, the deal is done and a contract exists. The industry depends on this way of doing business to function.

16.     At 1:54 p.m. on Friday January 17 in Houston, which was 1:24 a.m. on Saturday January 18 in India, Vijay emailed me requesting that Tricon reduce the price for the deal by $25 per MT because prices of OX had fallen during the hours after he communicated Thirumalai's acceptance to me the morning of January 17 (in India). 2014.01.17 (2014.01.18 in India) Email from Vijay to Lockwood, TRI00012. He also again mentioned the 90 day payment terms I had already agreed to verbally.

17.     I responded via email a few minutes later, at 2:04 p.m. Houston Time (1:34 a.m. India Time). 2014.01.17 (2014.01.18 in India) Email from Lockwood to Vijay, TRI00012. I confirmed in writing that Tricon would give Thirumalai the 90 day payment terms. I also told him that Tricon would not agree to change the deal's price, explaining that we could not change the deal and that if the price had gone up after Thirumalai's acceptance, I could not retroactively ask Thirumalai to change the deal. I told him the path forward was to get the deal we had made done and that Tricon would provide the most competitive price available for the next deal. At this point we both hoped the deal we had made would be the beginning of a long-term relationship, and I said that in my

email as well.

18.     Vijay responded to this email early in the morning of Monday January 20 in Houston, which was 1:41 p.m. Monday in India, expressing his understanding, saying "Sure, let's connect tonight." 2014.01.20 Email from Vijay to Lockwood, TRI00015.

19.     After this, the deal moved forward and Vijay and I discussed the specifics of the OX shipment, just as I would normally do once a contract has been made. My colleague Guy Demetriadi also began coordinating with Mr. Vijay about logistics for the delivery, as Demetriadi is in London and closer to the French port from which Tricon intended to ship the OX for Thirumalai.

20.     On Tuesday January 21 (1:22 a.m. Houston Time, 12:52 p.m. India Time), Vijay emailed inquiring about the exact quantity. 2014.01.21 Email from Vijay to Lockwood, TRI000021. The terms of the deal provided for 2000-3000 MT of OX, and left the exact quantity as the seller's option. I informed Vijay by phone that it would be closer to 3,000 MT.

21.     On January 22 (12:17 a.m. in Houston, 11:47 a.m. in India), I sent Vijay Tricon's written sales contract proposing additional terms and conditions, including an agreement to arbitrate. 2014.01.22 Email from Lockwood to Vijay with attachment, TRI000024-27. This is customary in petrochemicals trading. After the traders make the deal, the companies "pass paper" to negotiate additional terms for the deal. This does not mean that the deal was not made. Even if the companies do not agree to the additional terms, there is still a deal.

22.     After I sent the additional terms and conditions, Vijay and I discussed the agreement over the phone. One of the things we talked about was the terms and conditions in the written sales contract. Vijay said that Thirumalai had two more terms it needed to add: (1) a term requiring Tricon to agree to abide by the Chennai port restrictions on low flash items; and (2) a term whereby Tricon agreed to pay for the

charges associated with Thirumalai's opening the letter of credit for the deal. I agreed orally to both additional terms. Vijay did not ask for any other changes to the Tricon sales contract terms and conditions. I left the conversation with the clear understanding that Thirumalai had no problem with the Tricon terms and conditions and accepted them.

23.     On January 23, Vijay emailed me regarding the sales contract, reiterating in writing the two additional terms Thirumalai asked to add to the contract. 2014.01.23 Email from Vijay to Lockwood, TRI000028. He added: "[r]egarding any *other* changes and the bank where we will open our LC, I will let you know." (Emphasis added). This follows from our phone conversation, where he communicated that he was only aware of two additional terms that TLC needed to add to the Tricon sales contract, and otherwise the terms were acceptable.

24.     I confirmed Tricon's agreement to pay for the LC charges in writing to Vijay on January 31, 2014. 2014.01.31 Email from Lockwood to Vijay, TRI000077. I said in the email: "However, since this is our first deal, *I already told you* that I would be willing to cover the cost of opening the lc on this transaction." (Emphasis added). I also told him that Tricon's credit team was working on getting credit insurance to get an open account, but that it was best to move forward as if this will be a letter of credit based transaction.

25.     Arbitration agreements are common in international petrochemicals trading contracts. At times parties request changes to the seat of arbitration or other details, or more rarely, parties object to arbitration all together.

26.     If Thirumalai had concerns or issues with the terms of the agreement, including the arbitration agreement, it would have been standard industry practice for Vijay to raise them during our call or in the email he sent me reiterating the two additional terms Thirumalai needed to add. Vijay never raised any concerns or objections with the terms and conditions in the sales contract. The only requests by Thirumalai were

to add the two additional terms, which Tricon agreed to do immediately.

27.     On February 6 (February 7 in India), Vijay asked to move the shipment back to April and asked for changes to the price, terms and conditions. 2014.02.06 Email from Vijay to Lockwood, TRI0000077. The next day, I told Vijay that Tricon agreed to move the shipment date to April, but reminded him that the termsfrom the original deal, including price, would remain. 2014.02.07 Email from Lockwood to Vijay, TRI0000076-77. I told him that we had a deal.

28.     After this, Vijay and I continued to discuss the letter of credit and open account issues. Thirumalai wanted an open account but Tricon could not get credit insurance to cover the risk, so Tricon would not approve an open account. I informed Vijay that the LC needed to be opened, and sent instructions for doing so, on February 7.

29.     After sending the instructions, my colleague Amit Bansal worked with Vijay on the letter of credit issues.

30.     Thirumalai never opened the letter of credit and instead Vijay continued to request specific details for the shipment that Tricon could not provide until it secured a vessel, such as the arrival date, the country of loading, and the exact dispatch date. Tricon could not know these details until it engaged a carrier, as such details would depend on where the vessel was coming from, and the vessel's other cargo. None of these details were part of the terms of the deal. We agreed to a loading window, originally in February, which was later changed to April, but there were no terms that required Tricon to provide a firm schedule. However, the sales contract did require Thirumalai to secure the letter of credit.

31.     It is Tricon's (and other petrochemicals trader's) practice to not load goods without some guarantee of payment from the seller. Some deals are pre-paid in whole or in part, others are done on a letter of credit or open account basis. Even with an open account, the risk of non-payment by the buyer is covered by credit insurance. It is

- 8 -

impractical to secure a vessel or begin to load a vessel without a guarantee of payment because it is too expensive to unload the material once it is loaded or to change the discharge port. Once the material is loaded, if the buyer does not pay, the seller has no practical alternative but to ship the material to the discharge port, store it, incurring costs, and try to find another buyer. With a letter of credit based deal, it is critical that the buyer secure the letter of credit before Tricon engages a vessel and begins loading. Because this was Tricon's first deal with Thirumalai and Tricon had no history with Thirumalai, the risk of non-payment was on my mind during my dealings with Vijay.

32.     On February 26, Vijay told me that TC would "come back to you in April for a revised offer" if Tricon did not provide a firm schedule. 2014.02.26 Email from Vijay to Lockwood, TRI000095. At this point, I was very concerned that Thirumalai would not secure the required letter of credit and would not perform the deal.

33.     The same day, I responded to address Vijay's email and reiterated the status of the deal. Specifically, I said: (1) Tricon sent LC opening instructions on February 7, but Thirumalai had not submitted anything showing an application or a letter of credit; (2) Tricon agreed to Thirumalai's request to change the delivery period to April instead of February, but the original terms regarding price and letter of credit requirement were still effective; (3) Tricon agreed to cover the costs of opening the LC so the cost of it should not be an issue; (4) Tricon could advise of the exact country of origin and vessel once it had the letter of credit; (5) the purchase specifications for the OX were not an issue and Tricon had agreed to meet all Thirumalai's specifications as part of the original deal; and lastly (6) Tricon wanted to be a regular supplier for Thirumalai, but had to have payment assurances for the first deal before anything could move forward. 2014.02.26 Email from Lockwood to Vijay, TRI000095.

34.     On February 27, Vijay told me that Thirumalai could not open the required letter of credit without knowing the timing of dispatch, arrival, and load country, and that

- 9 -

it would "not be able to go ahead on this procurement." 2014.02.27 Email from Vijay to Lockwood, TRI000094.

35. After Vijay communicated Thirumalai's cancellation, I continued to try to urge Thirumalai's performance, including nominating a vessel for the shipment. Thirumalai refused to perform.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2016.

Brad J. Lockwood

| From: | Amit Bansal |
|---|---|
| To: | Brad Lockwood |
| Subject: | FW: Regarding Petrochemical Import |
| Date: | Wednesday, January 15, 2014 5:39:13 AM |
| Attachments: | 9F6B624D-0A7B-47AE-BB35-6526EA026479.png |
| | EEBFACB7-09FF-4B89-A520-88117D9ABB91.png |

FYI

Best Regards

**Amit Bansal**

T: +1-713-963-0066
M: +1-713-261-7426

TRICON ENERGY INC.
777 POST OAK BLVD SUITE 550

HOUSTON, TEXAS 77056

**From:** Mark <mark.vijay@thirumalaichemicals.com>
**Date:** Wednesday, January 15, 2014 2:09 AM
**To:** Amit Bansal <bansala@triconenergy.com>
**Subject:** Regarding Petrochemical Import

Dear Mr. Bansal,

Greetings for 2014!

Would like to know if Tricon Energy is involved in import of Orthoxylene into India.

Regards,
Mark

E: mark.vijay@thirumalaichemicals.com
M: +91-98423-06767 / 91-98408-06282

| From: | Brad Lockwood |
|---|---|
| To: | mark.vijay@thirumalaichemicals.com |
| Cc: | Amit Bansal; David Susanto; Guy Demetriadi |
| Subject: | Orthoxylene into India |
| Date: | Wednesday, January 15, 2014 6:57:54 AM |

Hello Mark,

Thank you very much for your email.  Yes, Tricon is involved in moving Orthoxylene all over the world, including India.  Please let us know your requirement(s) and price idea, so that we may have a chance to offer your company.

Thank you very much,
Brad Lockwood
Tricon Energy
Mobile: +1-713-443-5070

Sent from my iPhone

| From: | Mark |
|---|---|
| To: | Brad Lockwood |
| Cc: | Amit Bansal; David Susanto; Guy Demetriadi |
| Subject: | RE: Orthoxylene into India |
| Date: | Wednesday, January 15, 2014 7:08:18 AM |
| Attachments: | TCL_OX Spec.pdf |

Hello Brad,

Thanks for your quick reply. We are interested in importing 5000 MT of OX at the Chennai port, preferably in blocks of 2000 or 3000 MT.

Reg. price: Our price reference could be on Platts SEA or Platts India.

I've also attached our spec sheet for your reference.

Would like to hear regarding your offer.

Regards,
Mark


-----Original Message-----
From: Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
Sent: Wednesday, January 15, 2014 6:28 PM
To: mark.vijay@thirumalaichemicals.com
Cc: Amit Bansal; David Susanto; Guy Demetriadi
Subject: Orthoxylene into India

Hello Mark,

Thank you very much for your email.  Yes, Tricon is involved in moving Orthoxylene all over the world, including India.  Please let us know your requirement(s) and price idea, so that we may have a chance to offer your company.

Thank you very much,
Brad Lockwood
Tricon Energy
Mobile: +1-713-443-5070

Sent from my iPhone

—————————————————————————

The information contained in this e-mail is confidential and may be privileged. It is intended solely for the addressee. If you are not the intended recipient please inform the sender of the error and delete this message. Tricon Energy Ltd. or any of its affiliates or subsidiaries ("Tricon") expressly prohibits any disclosure, copying, distribution, or any action or act of forbearance taken in reliance of a misdirected email or by an unintended recipient. Any views expressed in this e-mail are those of the individual sender, except where the sender specifically states them to be the views of Tricon.

| From: | Brad Lockwood |
|---|---|
| To: | "Mark" |
| Cc: | David Susanto; Guy Demetriadi |
| Subject: | RE: Orthoxylene into India |
| Date: | Thursday, January 16, 2014 12:36:00 AM |

Hi Mark,

Good afternoon. As per our conversation, I'm excited about the possibility of beginning a spot relationship with your esteemed company. As such, we are pleased to offer as follows:

Seller: Tricon Energy, Ltd.
Buyer: Thirumalai Chemicals (please advise full style)
Product: Orthoxylene
Quantity: 2000 - 3000 MT (seller's option)
Quality: Meeting your purchase specifications
Incoterms: CFR
Discharge Port: Chennai, India
Load Window: February - March 2014
Price: 1420 US Dollars Per Metric Ton
Payment Terms: 60 days from BL date via documentary letter of credit from a Tricon approved bank (No LC required if your company is approved for open account by our credit department)
Validity: Noon Houston Time, Thursday, January 16, 2014

On spot, sometimes it is easier to work on a fixed price (where as a contract of course would be using a formula price). Further, when we sell on a formula, it is always related to CFR China pricing (like Reliance sells on). Thus, I look forward to getting your feedback on the above, and I will contact you when I wake up.

Thank you very much,
Brad Lockwood
Tricon Energy
Mobile: +-1-713-443-5070

-----Original Message-----
From: Mark [mailto:mark.vijay@thirumalaichemicals.com]
Sent: Wednesday, January 15, 2014 7:08 AM
To: Brad Lockwood
Cc: Amit Bansal; David Susanto; Guy Demetriadi
Subject: RE: Orthoxylene into India

Hello Brad,

Thanks for your quick reply. We are interested in importing 5000 MT of OX at the Chennai port, preferably in blocks of 2000 or 3000 MT.

Reg. price: Our price reference could be on Platts SEA or Platts India.

I've also attached our spec sheet for your reference.

Would like to hear regarding your offer.

Regards,
Mark


-----Original Message-----

TRI000005

| From: | Brad Lockwood |
|---|---|
| To: | "Mark" |
| Cc: | David Susanto; Guy Demetriadi |
| Subject: | RE: Orthoxylene into India |
| Date: | Thursday, January 16, 2014 9:12:00 AM |

Hi Mark,

Good evening.  Thank you for your call.  Please find our revised offer as follows:

Seller:  Tricon Energy, Ltd.
Buyer:  Thirumalai Chemicals (please advise full style)
Product:  Orthoxylene
Quantity:  2000 - 3000 MT (seller's option)
Quality:  Meeting your purchase specifications
Incoterms:  CFR
Discharge Port:  Chennai, India
Load Window:  February 1-28, 2014
Price:  1405 US Dollars Per Metric Ton
Payment Terms:  60 days from BL date via documentary letter of credit from a Tricon approved bank
(No LC required if your company is approved for open account by our credit department)
Validity:  Noon India Time, Friday, January 17, 2014  (colleague in London would like to know if we will
be shipping to India or if he should focus on sending this parcel to South America instead)

I look forward to getting your positive reply.

Thank you very much,
Brad Lockwood
Tricon Energy
Mobile: +1-713-443-5070

TRI000007

| From: | Mark |
|---|---|
| To: | Brad Lockwood |
| Cc: | David Susanto; Guy Demetriadi |
| Subject: | RE: Orthoxylene into India |
| Date: | Thursday, January 16, 2014 11:12:23 PM |

Dear Brad,

Greetings!

As discussed with you, we will be able to accept the offer, subject to 90 days credit. Transit time of about 30 days from Europe to India essentially reduces the credit period by that amount.

Also, for our international buying, the credit is usually 90 days.

I hope this is okay with you.

Regards,
Mark

-----Original Message-----
From: Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
Sent: Thursday, January 16, 2014 8:42 PM
To: Mark
Cc: David Susanto; Guy Demetriadi
Subject: RE: Orthoxylene into India

Hi Mark,

Good evening. Thank you for your call. Please find our revised offer as follows:

Seller: Tricon Energy, Ltd.
Buyer: Thirumalai Chemicals (please advise full style)
Product: Orthoxylene
Quantity: 2000 - 3000 MT (seller's option)
Quality: Meeting your purchase specifications
Incoterms: CFR
Discharge Port: Chennai, India
Load Window: February 1-28, 2014
Price: 1405 US Dollars Per Metric Ton
Payment Terms: 60 days from BL date via documentary letter of credit from a Tricon approved bank
(No LC required if your company is approved for open account by our credit department)
Validity: Noon India Time, Friday, January 17, 2014 (colleague in London would like to know if we will be shipping to India or if he should focus on sending this parcel to South America instead)

I look forward to getting your positive reply.

Thank you very much,
Brad Lockwood
Tricon Energy
Mobile: +1-713-443-5070

---

The information contained in this e-mail is confidential and may be privileged. It is intended solely for the addressee. If you are not the intended recipient please inform the sender of the error and delete this message. Tricon Energy Ltd. or any of its affiliates or subsidiaries ("Tricon") expressly prohibits any

TRI000008

| From: | Brad Lockwood |
|---|---|
| To: | "mark" |
| Subject: | RE: Orthoxylene into India |
| Date: | Friday, January 17, 2014 2:04:00 PM |
| Importance: | High |

Mark,

I've been in meetings all day today. I spoke to my colleague in London, and I was able to get the additional 30 days of payment terms for you that you requested. So, the acceptance you had sent on the 16th basis 90 day payment terms was agreed to. When we (Tricon) do spot business, I can't retroactively ask suppliers for discounts when the price fall, and I surely can't ask the customer to pay more when the price goes up. If the market had gone up $25/mt today, would you accept to pay more? Of course not, nor would I ask. Also, I can't go to the vessel owners and ask for a reduction in freight because the customer would like to pay less or the supplier would like for me to pay more. Business just wouldn't work like that.

So, I think the best thing for us to do since this deal is the start of what I hope can be a long working relationship together will be to follow closely the port rules regarding flash cargo, make sure things go smoothly on this deal, and then look to provide the most competitive price (as we always will) at that time for our next deal.

If you have any questions, please let me know. I look forward to speaking to you on Monday.

Thank you very much,
Brad Lockwood
Tricon Energy

-----Original Message-----
From: mark [mailto:mark.vijay@thirumalaichemicals.com]
Sent: Friday, January 17, 2014 1:54 PM
To: Brad Lockwood
Subject: RE: Orthoxylene into India

Dear Brad,

Tried reaching you twice, but couldn't connect. Wanted to discuss with you regarding your OX offer on 2 aspects:

1. Regarding credit days -- my query to you this morn 2. OX has fallen $25 today across all geographies -- we would like to have a $25 reduction

Could you call me sometime tomorrow or suggest a good time to call pl.

I hope this is the start of a long relationship for our sourcing needs.

Regards,
Mark

-----Original Message-----
From: Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
Sent: 16 January 2014 22:17
To: Mark
Subject: RE: Orthoxylene into India

Mark,

| | |
|---|---|
| **From:** | Mark |
| **To:** | Brad Lockwood |
| **Subject:** | RE: Orthoxylene into India |
| **Date:** | Monday, January 20, 2014 2:11:17 AM |

Thanks, Brad.

Sure, lets connect tonight. Am travelling, but will be reachable from 10.30 pm - 12 am my time.

Regards,
Mark

-----Original Message-----
From: Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
Sent: Saturday, January 18, 2014 1:35 AM
To: mark
Subject: RE: Orthoxylene into India
Importance: High

Mark,

I've been in meetings all day today.  I spoke to my colleague in London, and I was able to get the additional 30 days of payment terms for you that you requested.  So, the acceptance you had sent on the 16th basis 90 day payment terms was agreed to.  When we (Tricon) do spot business, I can't retroactively ask suppliers for discounts when the price fall, and I surely can't ask the customer to pay more when the price goes up.  If the market had gone up $25/mt today, would you accept to pay more?  Of course not, nor would I ask.  Also, I can't go to the vessel owners and ask for a reduction in freight because the customer would like to pay less or the supplier would like for me to pay more.  Business just wouldn't work like that.

So, I think the best thing for us to do since this deal is the start of what I hope can be a long working relationship together will be to follow closely the port rules regarding flash cargo, make sure things go smoothly on this deal, and then look to provide the most competitive price (as we always will) at that time for our next deal.

If you have any questions, please let me know.  I look forward to speaking to you on Monday.

Thank you very much,
Brad Lockwood
Tricon Energy

-----Original Message-----
From: mark [mailto:mark.vijay@thirumalaichemicals.com]
Sent: Friday, January 17, 2014 1:54 PM
To: Brad Lockwood
Subject: RE: Orthoxylene into India

Dear Brad,

Tried reaching you twice, but couldn't connect. Wanted to discuss with you regarding your OX offer on 2 aspects:

1. Regarding credit days -- my query to you this morn 2. OX has fallen $25 today across all geographies -- we would like to have a $25 reduction

Could you call me sometime tomorrow or suggest a good time to call pl.

TRI000015

| | |
|---|---|
| **From:** | mark |
| **To:** | Brad Lockwood |
| **Subject:** | RE: Orthoxylene into India |
| **Date:** | Tuesday, January 21, 2014 1:22:08 AM |

Brad,

Would like to know by when we will know regarding the confirmation in volume -- whether 2000  MT or 3000 MT. During our call last week you had indicated it will be closer to 3000 MT -- since we need to plan accordingly.

Regards,
Mark

-----Original Message-----
From: mark [mailto:mark.vijay@thirumalaichemicals.com]
Sent: 21 January 2014 07:50
To: 'Brad Lockwood'
Subject: FW: Orthoxylene into India

Brad,

Tried reaching you last night. Hope you had a chance to look through the documents I had sent you.

Regards,
Mark

-----Original Message-----
From: Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
Sent: 18 January 2014 01:35
To: mark
Subject: RE: Orthoxylene into India
Importance: High

Mark,

I've been in meetings all day today.  I spoke to my colleague in London, and I was able to get the additional 30 days of payment terms for you that you requested.  So, the acceptance you had sent on the 16th basis 90 day payment terms was agreed to.  When we (Tricon) do spot business, I can't retroactively ask suppliers for discounts when the price fall, and I surely can't ask the customer to pay more when the price goes up.  If the market had gone up $25/mt today, would you accept to pay more?  Of course not, nor would I ask.  Also, I can't go to the vessel owners and ask for a reduction in freight because the customer would like to pay less or the supplier would like for me to pay more.  Business just wouldn't work like that.

So, I think the best thing for us to do since this deal is the start of what I hope can be a long working relationship together will be to follow closely the port rules regarding flash cargo, make sure things go smoothly on this deal, and then look to provide the most competitive price (as we always will) at that time for our next deal.

If you have any questions, please let me know.  I look forward to speaking to you on Monday.

Thank you very much,
Brad Lockwood

TRI000021

| | |
|---|---|
| **From:** | Brad Lockwood |
| **To:** | Mark |
| **Cc:** | Guy Demetriadi |
| **Subject:** | Orthoxylene |
| **Date:** | Wednesday, January 22, 2014 12:17:14 AM |
| **Attachments:** | RDSALESA_EN_649325_213498_2498.pdf |
| | ATT00001.htm |

Hi Mark,

Please review our sales contract attached below.  Also, during Houston hours, let's discuss the information surrounding the points we talked about yesterday.

Thank you,
Brad Lockwood

Sent from my iPhone

Begin for

> **From:** Chad Johnson <johnsonc@triconenergy.com>
> **Date:** January 21, 2014 at 5:00:27 PM CST
> **To:** Brad Lockwood <Lockwoodb@triconenergy.com>
> **Subject: RE: Orthoxylene**



**Tricon Energy, Ltd**
777 Post Oak Blvd., Suite 550, Houston TX 77056
Tel 713 963-0066

### SALES CONTRACT

| Customer ("Buyer"): | |
|---|---|
| Thirumalai Chemicals Ltd | |
| | |
| Thirumalai House | |
| Road No. 29, Near Sion Hill Fort, | |
| Sion (East), Mumbai | |
| India | |

| Date: | 21 January 2014 |
|---|---|

| Tricon Sales Reference | 158197 |
|---|---|

This transaction between Thirumalai Chemicals Ltd ("Buyer") and Tricon Energy, Ltd ("Tricon" or "Seller") is subject to the terms herein and to Tricon Energy, Ltd attached Terms and Conditions.

| Line No. | Product | Quality/Grade | Quantity | Unit | Price/Unit/ Currency | Shipment Validity | Packaging |
|---|---|---|---|---|---|---|---|
| 1.000 | ORTHOXYLENE | As per agreed specs | 3,000.00 | MT | 1405.0000 MT- USD | 1 February 2014 - 28 February 2014 | . |
| | | **Contract Total** | | | **4,215,000.00** USD | | |

| | | | | |
|---|---|---|---|---|
| **Shipped Via** | TBN | | **Destination** | India |
| | | | **Port of Discharge** | Chennai (Madras)  India |
| **Inco Terms** | CFR - Cost and Freight, Chennai (Madras) | | **Scheduling Contact** | Chad Johnson |
| **Tolerance** | + 5.0/ - 5.0% Seller's option | | **Phone** | (713) 963-0066 |
| | | | **Email** | johnsonc@triconenergy.com |

| **Inspection** | Cost: | 100 % Seller at Load |
|---|---|---|
| **Inspection** | Quantity: | Static shore tank down gauge at Load |
| | Quality: | Static shore tank analysis at Load |

| **Notes** | Quantity:  2000 - 3000 MT (seller's option) |
|---|---|
| | Quality:  Meeting your purchase specifications |
| | Payment Terms: 90 days from BL date via documentary letter of credit from a Tricon approved bank  (No LC required if your company is approved for open account by our credit department) |

| **Payment Terms** | 90 days after BL | **Credit Contact** | Sergio Marazita |
|---|---|---|---|
| **Credit Terms** | Standby Letter of Credit | **Phone** | (713) 963-0066 |
| **If sale is on LC, then LC must be received within 3 working days after order issuance date and must comply with seller's requirements** | | **Email** | marazitas@triconenergy.com |

**Confirmation:  This Contract, which includes this cover page and the attached Terms and Conditions, is the complete and exclusive statement of all terms and conditions relating to this transaction between Buyer and Seller and supersedes all prior agreements, written or oral, between the parties, their agents and affiliates.  Should Buyer fail to notify us in writing of any objections to this confirmation by e-mail or mail (no faxes) within two business days after receipt of this confirmation, this Contract will be deemed correct and binding as the governing instrument for this transaction.  The Parties agree that electronic signature shall be sufficient to validate this Contract/Confirmation.**

Accepted

_____

Name:
Title:

Tricon Energy, Ltd

TRI000025



**Tricon Energy, Ltd**
777 Post Oak Blvd., Suite 550, Houston TX 77056
Tel 713 963-0066

## SALES CONTRACT

Tricon Energy - General terms and Conditions - " C"  INCO Terms - Liquid Sales Effective 21 June 2012
1) Vessel/Barge Nominations and Acceptance  Seller shall nominate the vessel to Buyer.  Any objection by Buyer (which must be reasonable) shall be communicated within 24 hours of Seller's nomination.  If Buyer does not object within 24 hours, Buyer shall be deemed to have accepted the vessel.
2) Discharging Facilities  Buyer shall provide, or cause to be provided a safe port and or berths which the vessel can safely reach and leave and at which she can lie and discharge safely at all times afloat. Notwithstanding anything contained in this Contract to the contrary, Buyer shall be deemed to warrant the safety of any such berth or berths and to indemnify Seller and hold Seller harmless for any loss, damage, injury or delay resulting from unsafe condition of such berth or berths which could have been avoided by the exercise of reasonable care on the part of Buyer or shore or government personnel at the discharge port.
3) Laytime and Demurrage  Buyer shall be obligated under this Contract to pay all discharge port demurrage for which Seller is billed by the vessel interests as long as Seller presents claim and supporting documents within 30 days after Seller receives a demurrage statement from the vessel interests.
4) Quantity and Quality Determination  Subject to Buyer's consent (which shall not be unreasonably withheld), Seller shall nominate an independent inspector at the load port to determine quality and quantity.  Unless otherwise specified in the " Quality Sample" described in the " Quantity/Quality Inspection" terms above, samples used to determine quality shall be taken before the Product crosses the vessel's rail or manifold and the quality of the Product shall be determined by such independent inspector at the load port, using sampling and testing methods customary for the Product at that place.  Unless otherwise specified in the " Quantity determination" described in the " Quantity/Quality Inspection terms above, the bill of lading quantity is to be the determination of the quantity.
Quantity and quality determinations shall be set out in quality and quantity certificates issued by the independent inspector appointed pursuant to this clause and shall be binding on both parties absent fraud or gross misconduct on the part of the inspector.
5) Product Acceptance  Acceptance will be deemed to have occurred when the governing sample of the Product for purposes of quality determination has been found to conform to the product description or specification set forth in this Contract.
6) Law and Jurisdiction  This Contract and the rights and duties of the parties arising out of this Contract shall be governed by and construed, enforced, and performed in accordance with the laws of the State of Texas, without regard to principles of conflicts of law, and, to the extent not inconsistent, by Incoterms 2000 or the latest published Incoterms generated by the International Chamber of Commerce (" Incoterms" ) in effect at the time this Contract is entered into.  The parties agree that this Contract shall be deemed to be accepted and formed in the state of Texas.
7) Additional Collateral Requirement  If, at any time and from time to time during the term of this Contract, there occurs a material adverse change in the financial condition of the Buyer (as determined by the Seller in its reasonable judgment), the Seller may request the Buyer to establish a letter of credit (in form and substance reasonably satisfactory to the Seller) or prepay in US Dollars the amount of transaction before loading the goods, failing which, Seller shall be entitled to suspend its performance hereunder and reclaim the Product, including a stoppage in transit, without prejudice to any other rights or remedies to which Seller may be entitled under the law or this Contract..
8) Force Majeure  For the purpose of this Contract, force majeure means an event, occurrence or circumstance reasonably beyond the control of the party claiming force majeure. Such events may include the following: any act of god or the elements; earthquakes; floods; landslides; wars (whether declared or undeclared); riots or civil unrest; the inability to obtain or the curtailment of electric power, water or fuel; strikes, lockouts or other labor disruptions (other than by the employees of the party claiming force majeure); fires; explosions; breakdowns or failure of pipe, plant; machinery or equipment (other than that of the party claiming force majeure) or the receiving facilities at the discharge port; destruction of the Product sold under this Contract before loading for shipment; delays of carriers due to breakdown or adverse weather, perils of the seas, embargos and accidents; and voluntary or mandatory restrictions imposed by any governmental authority or any organization, group or individual purporting to act in a governmental capacity (including allocations, priorities, requisitions, quotas and price controls). For the avoidance of doubt, a lack of funds, the availability of a more attractive market, or inefficiencies in operations do not constitute events of force majeure.
Neither party shall be liable in damages or otherwise for any failure or delay in performance of any obligation hereunder, other than obligation to make payment, where such failure or delay is caused by force majeure.
If by reason of force majeure either Seller or Buyer is delayed or hindered or prevented from complying with its obligations under this Contract, the affected party will immediately give notice to the other stating: the nature of the force majeure event, its effect on the obligations of the effected party, and the estimated date the contingency is expected to be removed. To the extent that the affected party is or has been delayed or hindered or prevented by a force majeure event from complying with its obligations under this Contract, except for the obligation to make payment, the affected party may suspend the performance of its obligations until the contingency is removed.
If the force majeure event cannot be permanently removed, or a force majeure event results in a delay extending beyond 30 days, either party may terminate this Contract upon written notice and both parties will be relieved of their further contractual obligations, except for the accrued rights and obligations which shall survive the termination of this Contract in accordance with this provision. Notwithstanding this clause, neither party shall be relieved of making payment in full and in accordance with this Contract of any sums that have accrued due under this Contract prior to its termination including but not limited to the price and demurrage.
If force majeure affects Seller, Seller may at its option, exercised by notice to Buyer given within a reasonable time, either (1) cancel from this Contract the quantities which have not been shipped due to force majeure, without affecting the balance of this Contract; or (2) ship such quantities in one or more lots, after Seller deems the effect of force majeure to have ended, on the same terms as set forth in this Contract.
9) Risk and Title  Except as otherwise specifically provided in this Contract, risk and title in respect of the Product shall pass from Seller to Buyer and delivery shall be deemed to be complete as defined by the Incoterms applicable to this sale.  Seller warrants that it has full marketable title to the Product free and clear of any lien or encumbrance and that it has full right and authority to transfer such title to Buyer and to effect delivery of the Product.
Without prejudice to any other rights of Seller under this Contract or any rule, regulation or provision of law, Seller shall have a lien upon the Product or any part thereof until such time as Buyer has paid in full (including demurrage and interest, if any) in the agreed currency for the Product.
10) Taxes  Buyer and Seller shall each be responsible for paying any taxes, duties, fees or whatever other similar payments which it is obliged to pay in accordance with the applicable law and the allocation of Seller's and Buyer's responsibilities pursuant to Incoterms.
Buyer shall indemnify and hold Seller harmless from any tax (including penalties and interest) or loss resulting from Buyer's failure to comply with any obligation in this Paragraph 10.
11) Insurance  Seller is not responsible for obtaining or maintaining marine or any other type of insurance on the Product unless this sale is on CIF or CIP terms, in which case, Seller shall obtain cargo insurance entitling the Buyer to claim directly from the insurers and in accordance with minimum cover of the Institute Cargo Clauses in the event of loss of or damage to the Product during carriage to the named destination.
12) Arbitration  Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The arbitration proceedings shall take place in Houston, Texas, and shall be conducted in the English language before a board of three persons, consisting of one arbitrator to be appointed by Seller, one by Buyer and one by the two so chosen.  The party seeking arbitration must nominate an arbitrator in its demand for arbitration.  In the event that a party does not nominate an arbitrator within 20 days of receiving a demand for arbitration, the party initiating the arbitration shall be entitled to appoint a second arbitrator on behalf of the other party with the same force and effect as if that other party had nominated an arbitrator itself. The arbitrators need not be on the AAA Roster.  The award, which shall be a reasoned award, may include reasonable attorneys' fees.  AAA Commercial Rule R-48(c) is modified to add the words "or foreign" between "state" and "court."
The parties also agree that the AAA Optional Rules for Emergency Measures of Protection shall apply.  In such circumstances, the AAA shall appoint the arbitrator pursuant to Rule O-2 of such Optional Rules.
In the event that Buyer fails to perform its obligations in a timely manner, Buyer acknowledges that Seller may incur substantial costs and losses, including but not limited to market losses, vessel costs and expenses, as well as other expenses in connection with transport, storage or resale of the Product.
13) Product Use and Disclaimer of Seller Warranty  Buyer represents and warrants that the Product purchased hereunder shall be used for other than gasoline production or blending purposes in the United States.  Buyer shall notify Seller in writing, as soon as possible, of any change in planned or actual consumption or use of the Product purchased hereunder, in breach of the foregoing representation and warranty, whether such change is by virtue of Buyer' s action or those of third parties to whom Buyer has (directly or indirectly) sold the Product.
Seller warrants only that the Product, at the time of delivery, will conform to the quality and quantity specification set forth in this Contract, and Seller expressly disclaims any and all other warranties, whether express or implied, and whether arising by operation of law or otherwise, including, without limitation, any warranty of merchantability or fitness of the Product for a particular purpose.
14) Price and Payment  The Price and all other amounts payable by Buyer to Seller under this Contract shall be payable without any discount, deduction, set-off, lien, claim or

TRI000026



**Tricon Energy, Ltd**
777 Post Oak Blvd., Suite 550, Houston TX 77056
Tel 713 963-0066

### SALES CONTRACT

counterclaim.
15) Interest  If the Price as defined under this Contract or any other amounts due from Buyer  to Seller are not paid when due as indicated on the applicable invoice, interest shall accrue and shall be paid by the Buyer to Seller on all amounts outstanding at a rate equal to the lesser of 18% per annum or the maximum interest payable in such circumstances under the laws of the State of Texas, such interest accruing from the due date listed on the invoice (or other applicable document) through the date when payment in full is received by the Seller in U.S. Dollars in immediately available funds in its account at its designated bank.
16) Acceptance   Unless Buyer promptly and expressly rejects this Contract in writing, Buyer shall be deemed to have accepted all terms of this Contract.
17) Amendments/Additions  This Contract, which consists of all the foregoing provisions, is the complete and exclusive statement of all terms and conditions relating to this transaction between Buyer and Seller and supersede all prior agreements between Seller (and its agents and affiliates) and Buyer (and its agents and Affiliates), written or oral, relating thereto.  Broker correspondence relating to the transaction covered by this Contract may not be used to vary the terms of this Contract and shall be used solely for documenting commission, if any.  The provisions of this Contract may only be amended in writing agreed to by both parties and the waiver of any provision by either party must be by written agreement of that party.

Please advise your acceptance and agreement by signing this Contract.  Please send the signed original of this Agreement to Seller via courier.  In the event we do not receive your written reply, then this Agreement shall be the governing instrument.
We thank you for the opportunity of concluding this transaction.

TRI000027

| From: | mark |
|-------|------|
| To: | Brad Lockwood |
| Cc: | Guy Demetriadi |
| Subject: | RE: Orthoxylene |
| Date: | Wednesday, January 22, 2014 2:18:39 PM |

Dear Brad,

The charges paid to the bank for import LC is 1% for 30 days, the Cost of Capital, 12.5% ( annual rate ).

Following two points need to be included in the sales contract as discussed:

1.  The Seller will ensure that no low flash cargo or hazardous chemical will be brought as in-transit cargo to the Chennai port (including Class A Cargo, Para Xylene, Benzene, Styrene Monomer) -- in line with the restrictions at the Chennai port.
2.  Incase the Seller is unable to provide open account facility to the buyer for this sale, charges payable to bank for import LC of 90 days (3%) will be discounted from the price, and the LC will be opened at the discounted price.

Regarding any other changes and the bank where we will open our LC, I will let you know.

Please let us know regarding the products you wish to load/ can be expected as in-transit cargo at Chennai port, so we may advise you suitably.

Thanks,
Mark

---

**From:** Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
**Sent:** 22 January 2014 11:47
**To:** Mark
**Cc:** Guy Demetriadi
**Subject:** Orthoxylene

Hi Mark,

Please review our sales contract attached below. Also, during Houston hours, let's discuss the information surrounding the points we talked about yesterday.

Thank you,
Brad Lockwood

Sent from my iPhone

Begin for

TRI000028

<image001.png>
<image002.png>
**Omer Ibrahim**
T: 713-496-3726
F: 713-985-6190
M: 713-503-0623

TRICON ENERGY LTD.
777 POST OAK BLVD SUITE 550
HOUSTON, TEXAS 77056

---

**From:** Brad Lockwood
**Sent:** Tuesday, January 21, 2014 9:01 AM
**To:** Omer Ibrahim; Sergio Marazita
**Cc:** Brian Morris; Tanvir Ali
**Subject:** FW: Annual Report and Fin Reports

---

**From:** Mark [mailto:mark.vijay@thirumalaichemicals.com]
**Sent:** Thursday, January 16, 2014 11:55 PM
**To:** Brad Lockwood
**Cc:** Guy Demetriadi; David Susanto
**Subject:** Annual Report and Fin Reports

Dear Brad,

Have attached the following financial reports for your reference. Pl. note the financial year in India is from April 1st to March 31st.

| | | |
|---|---|---|
| 1. | Annual Report for FY 13 | : April '12 – March '13 |
| 2. | Quarter 1, FY 14 | : April '13 – June '13 |
| 3. | Quarter 2, FY 14 | : July '13 – Sep '13 |

We are a public listed company in India and are listed on the National Stock Exchange and the Bombay Stock Exchange and our PA manufacturing has been operational for the last 40 years.

Our production facilities are located in Ranipet (India) where we manufacture Phthalic Anhydride, Plasticizers and Food Ingredients, and at Kemaman (Malaysia), where we manufacture Maleic Anhydride.

We serve customers in over 60 countries.

Thanks,
Mark

E: mark.vijay@thirumalaichemicals.com
M: +91-98423-06767 / 91-98408-06282
T: +91-(0)4172-244441 Ext: 255 / 205
F: +91-(0)4172-244308

2

| From: | Amit Bansal |
|---|---|
| Sent: | Friday, February 07, 2014 12:46 AM |
| To: | Brad Lockwood |
| Subject: | Re: Orthoxylene |

Hi Brad

I was not copied in previous email therefore LC instructions were not sent.
Sending them ASAP.

Best Regards
Amit





**Amit Bansal**

T: +1-713-963-0066
M: +1-713-261-7426

TRICON ENERGY INC.
777 POST OAK BLVD SUITE 550

HOUSTON, TEXAS 77056

On Feb 7, 2014, at 11:33 AM, "Brad Lockwood" <Lockwoodb@triconenergy.com> wrote:

Mark,

Thank you for your email. Sorry for the delay of our credit team in giving you the LC opening instructions. Our team was waiting on the credit insurance decision, but we will be calling you today with those lc instructions. Our deal was loading in February, so there is no delay which should be conflicting with your domestic supply.

One option that we were considering was the possibility of doing a swap and instead of giving you our European cargo, giving you cargo from our Thai supply, or another Asian cargo that we have in order to have a vessel that can meet the restrictions of Chennai. We are open to working with you on the timing of the arrival of the cargo to help better fit your plant based on your other domestic supply. However, please keep in mind that agreeing to change the arrival of the cargo to the end of April doesn't automatically change the price. I'm open to hearing your thoughts, but until we both agree, the terms should remain from the original deal. Please let me know your thoughts, and Amit will be calling you to give you the lc opening instructions.

1

TRI000076

Thank you,
Brad Lockwood
Tricon Energy

---

**From:** mark [mailto:mark.vijay@thirumalaichemicals.com]
**Sent:** Thursday, February 06, 2014 11:41 PM
**To:** Brad Lockwood
**Cc:** David Susanto; Brian Morris; Sergio Marazita; 'cgsTCL'; 'ramya. b@bizdev. thirumalaichemicals. com'; nambirajan.n@thirumalaichemicals.com
**Subject:** FW: Orthoxylene

Dear Brad,

This refers to our ongoing communication pertaining to procurement of 3000 MT of OX.

We still not received any communication regarding confirmation of commercial conditions like possibility of direct payment or LC opening instructions, date of shipment -- we cannot with our schedules of production and purchases from domestic supplier keep this procurement pending for a long time, and hence would like to defer procurement to end of April with revised negotiated price, terms and conditions.

Thank you,
Mark

---

**From:** Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
**Sent:** Friday, January 31, 2014 9:53 AM
**To:** mark
**Cc:** David Susanto; Brian Morris; Sergio Marazita; Tanvir Ali; Omer Ibrahim; Ryan Yue
**Subject:** RE: Orthoxylene

Mark,

Hello. I have been speaking with Amit Bansal, and he said that the two of you have discussed the lc opening cost of 1% per quarter. Normally, this cost is absorbed by the buyer if they are not approved for open account. However, since this is our first deal, I already told you that I would be willing to cover the cost of opening the lc on this transaction. While my credit team is still working on getting credit insurance to get open account, I think it is best to move forward as if this will be a lc based transaction.

So, Amit will work with you to get our lc opening instructions to your colleagues, and then we will be working to nominate a ship soon for your approval. If you have any questions, please let me know. Otherwise, I hope that you have a great weekend.

Thank you,
Brad Lockwood
Tricon Energy

2

TRI000077

| | |
|---|---|
| **From:** | Brad Lockwood |
| **Sent:** | Thursday, February 27, 2014 9:54 AM |
| **To:** | 'mark'; Pundlik Gavas; Amit Bansal; Pundlik Gavas |
| **Cc:** | Tanvir Ali; Gigi Ren; Ryan Yue; David Susanto; sethuram.cg@thirumalaichemicals.com; ramya.b@bizdev.thirumalaichemicals.com; nambirajan.n@thirumalaichemicals.com; Brian Morris; Arjun Chopra; Guy Demetriadi |
| **Subject:** | RE: Orthoxylene Procurement |
| | |
| **Importance:** | High |

Mark,

I'm afraid you are confused. You have bought 3000 MT +/- 5% of orthoxylene based on your purchase specifications. You have agreed to pay $1405/MT with 90 day payment terms. We have agreed to changing the delivery period to April arrival. We have agreed to cover the 1% per quarter cost of you issuing a letter of credit.

You "not being able to go ahead on this procurement" is not an option. We have a deal and you must perform. I have explained to you that your performance on this first deal is key on being able to sell future parcels on open account.

Please confirm immediately whether you will be accepting delivery based on our agreed terms with the only change being the April delivery timing which you requested and we agreed. If you can not, we will be forced to begin legal action which would be sad considering this is our first of what I hope to be many deals together.

I will wait for your positive reply right away.

Thank you very much,
Brad Lockwood
Tricon Energy

---

**From:** mark [mailto:mark.vijay@thirumalaichemicals.com]
**Sent:** Thursday, February 27, 2014 12:49 AM
**To:** Brad Lockwood; Pundlik Gavas; Amit Bansal; Pundlik Gavas
**Cc:** Tanvir Ali; Gigi Ren; Ryan Yue; David Susanto; sethuram.cg@thirumalaichemicals.com; ramya.b@bizdev.thirumalaichemicals.com; nambirajan.n@thirumalaichemicals.com; Brian Morris; Arjun Chopra
**Subject:** RE: Orthoxylene Procurement

Dear Brad,

Thanks for your email.

As has been our standard practice we will not be able to open an LC without knowing the timing of despatch, timing of arrival, country of origin, and specific commercial terms.

Due to the abovementioned reasons, we will not be able to go ahead on this procurement.

We will get back to you on our next deal.

Regards,
Mark

1

TRI000094

---

**From:** Brad Lockwood [mailto:Lockwoodb@triconenergy.com]
**Sent:** 26 February 2014 23:54
**To:** mark; Pundlik Gavas; Amit Bansal; Pundlik Gavas
**Cc:** Tanvir Ali; Gigi Ren; Ryan Yue; David Susanto; sethuram.cg@thirumalaichemicals.com; ramya.b@bizdev.thirumalaichemicals.com; nambirajan.n@thirumalaichemicals.com; Brian Morris; Arjun Chopra
**Subject:** RE: Orthoxylene Procurement
**Importance:** High

Mark,

Thanks for your email below. Let me help clarify a few points:

1) We sent LC opening instructions on February 7th, and we have not received anything at all from your company
2) On February 6th, you had requested to change the delivery period to April instead of the February loading that we originally contracted. We accepted this request, but that doesn't mean:
   a. You don't have to issue a letter of credit
   b. By changing the delivery period, the price changes.
3) We already agreed to cover the lc opening charges that were agreed between me, Amit and yourself. Thus, there should be no reason for delaying opening the LC.
4) When we have the LC in hand, we will be able to advise the country of origin/vessel nomination. We need to know that your company is going to honor the deal by issuing the LC that was agreed to.
5) You don't have to worry about meeting your purchase specifications as that is a condition of the deal.
6) We want to be a regular supplier of yours, but we must have assurances that you will perform on the first deal. Performance on deals is what builds a track record to justify selling a customer on open account.

Thus, we need your urgent LC application for the parcel that we have sold you in order to move forward before we sell any additional cargo. We have agreed to cover your LC costs (that were agreed to), we have agreed to change the delivery period to April, thus there is no reason for you not to perform on the deal.

Please send your LC application by return to this email so we can finally move forward. If you need anything else, please let me know.

Thank you,
Brad Lockwood
Tricon Energy

---

**From:** mark [mailto:mark.vijay@thirumalaichemicals.com]
**Sent:** Wednesday, February 26, 2014 2:00 AM
**To:** Brad Lockwood; Pundlik Gavas; Amit Bansal; Pundlik Gavas
**Cc:** Tanvir Ali; Gigi Ren; Ryan Yue; David Susanto; sethuram.cg@thirumalaichemicals.com; ramya.b@bizdev.thirumalaichemicals.com; nambirajan.n@thirumalaichemicals.com; Brian Morris; Arjun Chopra
**Subject:** RE: Orthoxylene Procurement

Dear Brad,

It has been 3 weeks since we asked for the loading windows for the parcel. We still do not have a firm schedule from you on the dates of loading, country of loading and expected time of arrival.

*We cannot, with our production plans keep the procurement pending infinitely. Please revert within the next 24 hours with details on:*
1. Exact date of despatch

TRI000095