UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON ENERGY, LTD. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-cv-03756 |
| | § | |
| THIRUMALAI CHEMICALS, LTD. | § | |
|     Defendant. | § | |

**TRICON'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO COMPEL ARBITRATION**

Pursuant to the Court's March 4 Case Management Order (Doc. No. 18) Paragraph 1, Tricon Energy Ltd. ("Tricon") respectfully submits its reply brief in support of its motion to compel arbitration.

## I.    INTRODUCTION

Thirumalai, in its Response, acknowledges that the question of whether a valid agreement to arbitrate exists here is one that the Court should decide as a matter of law.[1]  To be certain, the parties disagree on the proper application of Texas U.C.C. contract formation principles.  But the record and briefing here make clear the question of whether an agreement to arbitrate was formed under Texas law is ripe for this Court's determination as a matter of law.

---

[1] *See* Resp. Brief at p. 1 (Doc. 14) (noting "this legal proposition should end the inquiry and the court need not address the details of 'offer and acceptance' predating the proposed arbitration clause").

## II.  ARGUMENT AND AUTHORITIES

### A.  The existence of a valid arbitration agreement here is a question of law.

Under Texas law, whether an offer was accepted and a contract formed is primarily a question of law for the court to determine. *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 207 (5th Cir.1998). "Where [as here] 'negotiations' are in writing, the question of whether an offer was unconditionally accepted is primarily a matter of law for the court." *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). Federal courts agree that where the terms of the alleged agreement and relevant amendments to related to arbitration can be gleaned from the documents, there is no need for discovery and the matter of arbitrability is decided as a matter of law. *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 828-29 (S.D. Miss. 2001), aff'd without opinion, 34 Fed. Appx. 964 (5th Cir. 2002).

### B.  The Court must apply Texas law to Thirumalai's January 23 email to determine whether it constitutes a legally binding acceptance.

Under the Texas U.C.C. an "offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." Tex. Bus. & Com. Code § 2.206(a)(1). Further, "A definite and seasonable expression of acceptance . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless

Case 4:15-cv-03756   Document 19   Filed on 03/08/16 in TXSD   Page 3 of 12

acceptance is expressly made conditional on assent to the additional or different terms." Tex. Bus. & Com. Code § 2.207(a).

As set forth in Tricon's initial brief, the parties made a contract for the sale of OX on January 16, 2014 as a result of Thirumalai's written acceptance of Tricon's written revised offer.[2]   A few days later on January 22, Tricon sent Thirumalai its Sales Contract with additional terms and conditions, including an agreement to arbitrate.[3]   Under the Texas U.C.C. this is a proposal to modify the existing contract by including additional terms.   *See* Tex. Bus. & Com. Code § 2.209(a).

As the writings of the parties make clear, on January 23, Thirumalai responded by email to Tricon's offer to modify the parties' agreement by adding the terms and conditions in Tricon's Sales Contract, including arbitration.[4] Thirumalai's response was to ask that two more additional terms be added:  (1) that Tricon agree to abide by the low-flash requirements at Chennai port; and (2) that Tricon agree to pay any charges associated with Thirumalai's obtaining a letter of

---

[2] *See* Tricon's Brief in Support of its Motion to Compel Arbitration (Doc. 13) at pp. 7-13.

[3] *See* 2014.01.22 Email from Lockwood to Vijay, TRI 000024, attached to the Statement of Brad J. Lockwood (Doc. 12).

[4] *See* 2014.01.23 Email from Vijay to Lockwood, TRI 000028.  During the negotiations, the parties were located in two different time zones, which differed by 11.5 hours.  Because of this, at times the dates of specific emails are also different.  Vijay's email responding to the Tricon Sales Contract was sent on January 22 in Houston, which was January 23 in India.  *See also* Lockwood Statement (Doc. 12) at ¶23.

- 3 -

00203948.DOCX; 6

credit if Thirumalai did not qualify for an open account, and that "[r]egarding any *other* changes … I will let you know."[5]   Tricon accepted Thirumalai's two additional terms[6] and Thirumalai never requested other changes.

The Texas U.C.C. contemplates exactly this situation.  Contracts under the U.C.C. may be modified without consideration by the agreement of the parties.  Tex. Bus. & Com. Code § 2.209(a).  Tricon's Sales Contract, which included the arbitration agreement, was an offer to modify the contract.  To determine if the parties agreed to arbitrate, the Court must decide whether Thirumalai's January 23 email response is a legally binding acceptance of Tricon's offer to modify the parties' agreement to include the terms and conditions in the Sales Contact.  In making this determination, the Court considers whether Thirumalai's written January 23 response to Tricon's offer (hereinafter "Thirumalai's January 23 email") was a "definite and seasonable expression of acceptance," given that acceptance may be communicated "in any manner and by any medium reasonable in the circumstances." *See* Tex. Bus. & Com. Code §§ 2.207(a), 2.206.  The Court also considers whether Thirumalai's acceptance was "expressly made conditional

---

[5] *See* 2014.01.23 Email from Vijay to Lockwood, TRI000028 (emphasis added).

[6] *See* Statement of Brad J. Lockwood at ¶¶22-24 (Doc. 12); 2014.01.31 Email from Lockwood to Vijay, TRI000077 (confirming that Tricon agrees to pay the letter of credit charges if Thirumalai did not qualify for open account).  Tricon had already accepted the term regarding low-flash restrictions at the port.  *See* 2014.01.18 Email from Lockwood to Vijay, TRI000015.  Tricon had always at least impliedly agreed to comply with the requirements of Chennai port since both its initial offer and revised offer required discharge at Chennai port.  *See* 2014.01.16 Emails from Lockwood to Vijay TRI000005 and TRI 000007.

00203948.DOCX; 6

on [Tricon's] assent" to Thirumalai's two more additional terms, Tex. Bus. & Com. Code § 2.207(a), and if so, whether Tricon gave its assent.

None of these determinations involve fact issues in this case. They are precisely the type of questions that Texas courts have consistently held present legal issues for the Court to decide: whether the writings of the parties form a legally binding agreement. *See e.g., Gilbert*, 838 S.W.2d at 893; *Tricon Energy, Ltd. v. Vinmar Intern., Ltd.*, 4:10-CV-05260, 2011 WL 4424802, at *12 (S.D. Tex. Sept. 21, 2011) (Rosenthal, J.), aff'd, 718 F.3d 448 (5th Cir. 2013); *Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, 718 F.3d 448, 453 (5th Cir. 2013).

### C. Thirumalai's January 23 email is a legally binding acceptance under Texas law as a matter of law.

Under the Texas U.C.C., Thirumalai's January 23 email accepted the additional terms in Tricon's Sales Contract, including the agreement to arbitrate. Although Thirumalai asked for two more additional terms, its acceptance was not made expressly conditional on Tricon's assent to the two additional terms. *See, e.g., McAfee v. Brewer,* 214 Va. 579, 581, 203 S.E.2d 129, 131 (1974) (holding that response instructing seller to include additional item in contract, but not containing any language making acceptance conditional on its inclusion in contract, was merely proposal for addition to contract that did not prevent contract from forming); *see also Westech Eng'g, Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc.*, 835 S.W.2d 190, 199 (Tex. App.—Austin 1992) (noting that

- 5 -

the party's written response to the offer did not expressly limit acceptance to its precise terms and nothing in the writing could be said to materially alter the parties' agreement); *Tri-State Petroleum Corp. v. Saber Energy, Inc.*, 845 F.2d 575, 578 (5th Cir. 1988) (noting that party's return of a written contract adding additional terms, without other language, was a proposal for additional terms under Section 2.207(b)).  More important, the undisputed evidence is that Tricon assented to both of Thirumalai's requested additional terms.[7]  Thus, there can be no doubt under the Texas U.C.C. that the terms and conditions in the Tricon Sales Contract, including the agreement to arbitrate (as well as Thirumalai's two additional terms), were offered and accepted and became part of the parties' contract.

The *Vinmar* case cited above is particularly instructive here because it involved the same Tricon Sales Contract form as this case.  The Tricon Sales Contract terms and conditions were also proposed as additional terms modifying a previously made contract to sell petrochemicals.   In deciding that the existence of an agreement to arbitrate should be decided as a matter of law, Judge Rosenthal noted that "[w]hether the record evidence shows that the parties modified their agreement to include an arbitration clause is a matter of law appropriate for this court to decide." *Vinmar Intern., Ltd.*, 4:10-CV-05260, 2011 WL 4424802, at *12. In *Vinmar,* Tricon and Vinmar made a contract for Tricon to sell a petrochemical

---

[7] *See* fn. 6, *supra.*.

to Vinmar. Like in this case, Tricon proposed additional terms, including arbitration, by sending Vinmar the same Sales Contract form that is involved in this case. *Id.* at *9. Like in this case, Vinmar responded by email, noting "please find enclosed our comments on your Sales Confirmation." Vinmar attached a marked-up copy of the Tricon terms and conditions that included more additional terms hand-written in, but made no comment on other terms, including the arbitration term. *Id.* at *3. Judge Rosenthal held that Vinmar's email and the marked-up contract "operated both as an acceptance of the terms in the Tricon sales contract to which [it] neither objected nor modified and as a counteroffer as to those terms identified in his comments." *Id.* at *9. Because Vinmar's writing in response to the Tricon Sales Contract form objected to some of Tricon's additional terms, asked for more additional terms, but did not comment on the arbitration clause, Vinmar "agreed to the arbitration clause as an additional term of the parties' contract" as a matter of law. *Id.*

The Fifth Circuit affirmed Judge Rosenthal's decision that the arbitration term was accepted as a matter of law. *See Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, 718 F.3d 448, 453 (5th Cir. 2013). Rejecting Vinmar's argument that acceptance of the arbitration term involved a fact question, the Fifth Circuit confirmed that under Texas law whether a writing in response to a written offer constitutes a binding acceptance may be determined as a matter of law. *Id.* at 454

- 7 -

(citing *Gilbert*, 838 S.W.2d at 893, and *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010)).  Thirumalai's January 23 email is a legally binding acceptance.

### D.  Tricon's Sales Contract is an offer of additional terms, not an acceptance of some (non-existent) Thirumalai offer.

Thirumalai asserts that Tricon's proposal for the additional terms in the Sales Contract was an *acceptance* expressly conditioned on Thirumalai's assent to additional terms.  This is backwards.  When Tricon sent Thirumalai the Sales Contract, it made an offer to modify the parties' agreement to add to the agreement the terms and conditions in the Sales Contract.  At the time Tricon sent its Sales Contract to Thirumalai, there was no offer from Thirumalai to which Tricon could respond.[8]

The Section 2.207(a) inquiry here, then, is whether *Thirumalai* accepted Tricon's offer for modification when Thirumalai's response to the offer proposed two additional terms.  Whether or not Thirumalai's response is an acceptance of Tricon's offer depends on whether Thirumalai's January 23 email made its acceptance of Tricon's modification offer expressly conditional on *Tricon's* assent to the two additional terms Thirumalai requested, and if so, whether Tricon

---

[8]  An offer must precede an acceptance.  Thirumalai itself reiterates the obvious fact that the Sales Contract is an offer in its brief, stating:  "Notably, the Tricon document does not simply attempt to add additional terms; it purports to entirely replace and supersede all prior agreements."  Resp. Brief at p. 3, ¶4.

assented to them.   As already noted, Thirumalai's acceptance of Tricon's additional terms was not expressly conditional on Tricon's assent to the two more additional terms, but even if it was, it does not matter because it is undisputed that Tricon did assent to Thirumalai's additional terms.[9]

Thirumalai's alternative argument under Section 2.207(b) also gets it backwards.   Thirumalai continues to incorrectly analyze the Tricon Sales Contract as an acceptance and urges the Court to consider whether the additional terms and conditions were material.   Again, there was no offer from Thirumalai to which the Sales Contract could respond.   An acceptance requires an offer. The Sales Contract was an offer under Section 2.209(a) to modify the agreement already made on January 16.   The question of whether the parties agreed to arbitrate here turns on whether Thirumalai's January 23 email constitutes a legally binding acceptance of Tricon's offer for modification by adding the terms and conditions in Tricon's Sales Contract, including arbitration.

### E.     Thirumalai is not entitled to a jury trial on the making of the arbitration agreement.

Under the FAA, a party resisting enforcement of an arbitration agreement by claiming no agreement exists "cannot obtain a jury trial merely by demanding one." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 961 F.2d 1148, 1154 (5th Cir. 1992)).   Instead, a party contesting the "making" of the arbitration

---

[9] *See* pp. 3-5, *supra*.

agreement under Section 4 of the FAA must "make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true … and produce some evidence to substantiate his factual allegations." *Id*.; *see* 9 U.S.C. §4. Here, Thirumalai has no allegations that if proved would relieve it of its contractual obligation, and has made no showing nor produced evidence to substantiate any such allegations. As noted above, the parties agree that the existence of Thirumalai's contractual obligation to arbitrate is a question of law for this Court. Thirumalai is not entitled to a jury trial. *See Dillard*, 961 F.2d at 1154.

## III.   CONCLUSION

The FAA "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 29 (1983); *see* 9 U.S.C. §§ 4, 6. Here the parties agree that this issue is a question of law to be resolved by the Court. The Texas U.C.C. provides direct guidance through this issue. On January 22 Tricon made an offer for modification under Section 2.209 to add the terms and conditions in the Tricon Sales Contract, which included an arbitration agreement. Thirumalai's January 23 email response is a legally binding seasonable and definite expression of acceptance under Sections 2.206 and 2.207. Multiple courts have confirmed this result, including Judge Rosenthal's discussion of the very same contract form

00203948.DOCX; 6

agreed to in the same manner as here—over emails between the parties after a deal had been made.  The U.C.C. itself confirms that Thirumalai's request of two additional terms (which were accepted), does not impact the efficacy of its acceptance.  Accordingly, as a matter of law, Thirumalai and Tricon have entered into a binding agreement to arbitrate.

Respectfully submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

By: */s/ George R. Diaz-Arrastia*
    George R. Diaz-Arrastia
    State Bar No. 05805600
    S.D. Texas Federal I.D. No. 12
    Pennzoil Place ~ North Tower
    700 Milam Street, 10th Floor
    Houston, Texas  77002
    Telephone: (713) 221-2500
    Facsimile: (713) 228-3510
    Email: gdarrastia@sdablaw.com

 ATTORNEY-IN-CHARGE FOR PLAINTIFF
TRICON ENERGY, LTD.

- 11 -

<u>OF COUNSEL:</u>

William W. Russell
State Bar No. 00794573
S.D. Texas Federal I.D. No. 200426
Email: wrussell@sdablaw.com
Briana J. Bassler
State Bar No. 24059433
S.D. Texas Federal I.D. No. 980817
Email: bbassler@sdablaw.com
SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place ~ North Tower
700 Milam Street, 10th Floor
Houston, Texas  77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510


## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 8, 2016, a true and correct copy of the

foregoing document was served on all counsel of record by electronic mail:

> Jeff Joyce
> jjoyce@jmlawyers.com
> Huma Ali
> hali@jmlawyers.com
> 712 Main Street, Suite 1500
> Houston, Texas  77002
> Telephone: (713) 222-1112
> Facsimile: (713) 513-5577
>
> ATTORNEYS FOR DEFENDANTS

*George R. Diaz-Arrastia*
George R. Diaz-Arrastia